UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
In re:

MARLENE BEN-BARUCH,

               Appellant,

- vs -

ROBERT L. PRYOR, ESQ., PRYOR
& MANDELUP, L.L.P., DAVID R. MALTZ
& CO., INC., ISLAND PROPERTIES &
EQUITIES, L.L.C., GREENPOINT BANK,

               Appellees.
------------------------------------------------x

**Order**
The application is:
___ granted
_X_ denied  without prejudice in light of this Court's 12/23/08 Order (doc. no. 10).
___ referred to Magistrate Judge _____ for
___ decision
___ report and recommendation

1/7/09   CV-08-04273-(SJF)

## NOTICE OF MOTION TO DISMISS APPEAL

**PLEASE TAKE NOTICE,** that upon the annexed application of Robert L. Pryor, Esq. (The "Trustee"), the Trustee of the bankruptcy estate of Marlene Ben-Baruch and the appellee herein, by and through his attorneys, Pryor & Mandelup, L.L.P., and all the exhibits thereto, the Trustee shall make a motion, before the Honorable Sandra J. Feuerstein, Long Island Federal Courthouse, 100 Federal Plaza, Central Islip, New York 11722-4437 on the _____ day of _____ at _____ o'clock _.m. or as soon thereafter as counsel can be heard for an order pursuant to Rules 8009, 8010, and 8011 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") dismissing the above-captioned appeal as Appellant has failed to timely file and serve an appellate brief as required by Bankruptcy Rules 8009 and 8010 and the order of this Court, dated October 23, 2008.

**PLEASE TAKE FURTHER NOTICE**, that answering papers, if any, must be filed in accordance with Bankruptcy Rules 8011 and 9006.

Dated: Westbury, New York
December 22, 2008

PRYOR & MANDELUP, L.L.P.
Attorneys for the Trustee

By: _____
J. Logan Rappaport
675 Old Country Road
Westbury, New York 11590
(516) 997-0999

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------x
In re:

MARLENE BEN-BARUCH,
                Appellant,

- vs -                          CV-08-04273-(SJF)

ROBERT L. PRYOR, ESQ., PRYOR
& MANDELUP, L.L.P., DAVID R. MALTZ
& CO., INC., ISLAND PROPERTIES &
EQUITIES, L.L.C., GREENPOINT BANK,

                Appellees.
----------------------------------------x

## AFFIRMATION IN SUPPORT OF MOTION TO DISMISS APPEAL

Robert L. Pryor, Chapter 7 trustee (the "Trustee" or "Appellee") of the bankruptcy estate of Marlene Ben-Baruch (the "Debtor" or "Appellant") submits this affirmation (the "Affirmation"), by and through his attorneys, Pryor & Mandelup, LLP, pursuant to Rules 8009, 8010, and 8011 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for an order dismissing the above-captioned appeal as Appellant has failed to timely file and serve an appellate brief as required by Bankruptcy Rules 8009 and 8010 and the order of this Court, dated October 23, 2008.

    1.    By this Application, the Trustee seeks the dismissal of an appeal taken by Appellant from the Order Approving Final Report, Granting Final Applications for Compensation and Granting Related Relief (the "Compensation Order", which is Attachment #66 of the Record on Appeal and is annexed hereto as Exhibit "A"), entered by the Bankruptcy Court on September 29, 2008. The Order granted, after a full evidentiary hearing, the Trustee's Final Report and granted commissions to the Trustee, attorneys' fees and reimbursement for expenses to Pryor & Mandelup, LLP and compensation and reimbursement for expenses to David R. Maltz & Co., Inc., the

1

auctioneer (the "Auctioneer").

## BACKGROUND

2. Over four (4) years ago, on March 13, 2004, the Debtor filed a Chapter 13 petition to stay a pending state foreclosure action filed by Greenpoint Savings Bank, ("Greenpoint") which held the first mortgage against the Appellant's former residence, located at 106 Turtle Cove Lane, Huntington, New York 11743 (the "Property"). Island Properties & Equities, LLC, ("Island Properties") was the assignee of a note and properly perfected second mortgage against the Property.

3. Almost immediately, difficulties arose in administering the Debtor's Chapter 13 case, not the least of which was the fact that the Debtor was unemployed and was not receiving periodic income which would be sufficient to cure the pre-petition mortgage delinquencies on her first mortgage. The Debtor's only stated source of income was a seven hundred dollar ($700.00) per month contribution from her husband and a pledge from her elderly mother to contribute four thousand nine hundred fifty dollars ($4,950.00) per month towards the Debtor's monthly household expenses. The Debtor's mother, however, remained unwilling to disclose to the Chapter 13 Trustee's satisfaction documentary evidence sufficient to substantiate her ability to make these very large periodic payments.

4. After approximately one year of motion practice in the Chapter 13 case, the Debtor, by and through her third attorney -- the other two having been replaced by the Debtor, -- by motion granted on March 16, 2005, converted her Chapter 13 case to one under Chapter 11.

5. The Chapter 11 case suffered from the same infirmity that plagued her Chapter 13 case, namely the Debtor's lack of sufficient income to cure the mortgage arrears. Accordingly, the Debtor proposed a Chapter 11 plan under which she would satisfy her personal liabilities and mortgage indebtedness by selling her residence and having the mortgage liens

2

transferred to the proceeds of sale.

6. At the hearing conducted on September 27, 2005, the Bankruptcy Court ruled that it would convert the Chapter 11 case to Chapter 7 without further notice or hearing if a final bid was not confirmed at the auction to be held on October 27, 2005. At that hearing the Court noted that, from its perspective, the Debtor had delayed the sale for more than a year and a half and as a result of her delaying tactics had lost the opportunity to sell the Property during the primary marketing season.

7. As a result of the Debtor's complete failure to successfully auction the Property, the Bankruptcy Court, on October 28, 2005, issued an order (the "Conversion Order") converting the Debtor's Chapter 11 case to one under Chapter 7 of the Bankruptcy Code and directing the United States Trustee to appoint a Chapter 7 trustee, who could market the property aggressively.

8. Subsequent to the conversion, Robert L. Pryor, Esq. was appointed interim trustee of the Debtor's bankruptcy estate and thereafter, duly qualified as permanent trustee at the meeting of creditors held on November 23, 2005. The Debtor failed to attend that meeting.

9. On November 17, 2005, after it had become abundantly apparent to the Trustee that the Debtor was unwilling to voluntarily vacate the Property or to comply with the Trustee's reasonable requests as to the manner of liquidating same, in order to expedite the administration of the case, the Trustee filed a motion on shortened notice compelling access to the Property, requiring the Debtor to cooperate with the Trustee, directing the Debtor and all of her family members and other persons occupying the Property to vacate the premises within thirty (30) days of the entry of the order, and in the event that the Debtor and her family members and others refused to vacate the Property, directing the United States Marshall to evict the Debtor and all person occupying the premises. After hearing all parties on the motion, the Bankruptcy Court entered an

order granting the Trustee the relief requested on December 16, 2005. That order was never appealed.

11. On November 30, 2005, the Bankruptcy Court issued an order allowing Pryor & Mandelup, LLP to be retained as counsel to the Trustee. Subsequently, on December 2, 2005, the Bankruptcy Court issued an order authorizing the retention of the Auctioneer, as auctioneer for the sale of the Property.

12. Thirty (30) days later, on January 16, 2006, the Debtor, by and through Gary M. Kushner, Esq., her fourth bankruptcy counsel, brought an order to show cause seeking to stay the December 16, 2005 eviction order and for reconverversion of the Debtor's bankruptcy case to Chapter 11. By order (the "Denial Order"), dated January 19, 2006, the Bankruptcy Court denied the Debtor's request for a stay of the eviction. The Debtor appealed that order by notice dated January 30, 2006.

13. In accordance with the unappealed eviction order, on the morning of February 22, 2006, the Trustee, through his professionals and with the assistance of the United States Marshall evicted the Debtor and other occupants from the Property.

14. That same afternoon the Debtor brought an order to show cause before this court seeking a stay pending appeal which was granted solely on the basis of the debtor's papers and limited oral argument by order dated February 23, 2006.

15. On July 26, 2006, this Court dismissed Debtor's appeals of (a) the Denial Order, as it was moot in light of this Court's February 23, 2006 order granting a stay pending appeal preventing Trustee from selling the Property absent Debtor's consent and allowing Debtor to repossess the Property, and (b) the Conversion Order for Debtor's failure to file with the clerk and serve on the appellees a designation of the record on appeal and a statement of the issues presented

by the appeal.

16. On January 26, 2007, the Bankruptcy Court issued an order authorizing the Trustee to sell the Property to Harlin Schwartzman for the sum of eight hundred and fifty thousand dollars ($850,000.00).

17. On October 1, 2007, the Bankruptcy Court issued an order denying the discharge of Debtor's Chapter 7 case pursuant to §§ 727(a)(3) and 727(a)(4)(d), in light of Debtor having concealed recorded information from the estate and withheld relevant recorded information regarding her financial affairs.

18. The Trustee filed a Final Report on January 8, 2008. On February 14, 2008, the Trustee filed an Amended Final Report (Attachment #9 of the Record on Appeal, and annexed hereto as Exhibit "B") to take into account the terms of a stipulation of settlement between the Trustee and Island Properties, the holder of the second mortgage on the Property, whereby two of Island Properties proofs of claim ("2" and "3") were expunged, and the third ("5") was reduced to three hundred twenty five thousand nine hundred and ten and 78/100 ($325,910.78). The Final Report called for the paying of all creditors one hundred (100%) of their allowed claims. The total disbursements to parties in interest, excluding the Debtor, was nine hundred thirty six thousand three hundred seventy-five and 94/100 ($936,374.95.), which included the two secured creditors, Greenpoint and Island Properties, holders of the two mortgages against the Property.

19. Furthermore, the Amended Final Report called for compensation as follows: fifty thousand sixty eight seventy-five ($50,068.75) to the Trustee, seven thousand five hundred seventy-five ($7,575) to the Auctioneer for professional fees and reimbursement of expenses, and one hundred six thousand six hundred one and 80/100 ($106,601.80) to Pryor & Mandelup, LLP for attorneys' fees and reimbursement of expenses. The bases for the requested

compensation were fully set forth in the Application for Compensation for Robert L. Pryor, as Chapter 7 Trustee (the "Trustee's Application", Attachment #10 of the Record on Appeal and annexed hereto as Exhibit "C"), the Amended Application for Compensation for Pryor & Mandelup, LLP, as attorneys for the Trustee (the "Amended Application", Attachment #11 of the Record on Appeal and annexed hereto as Exhibit "D"), and the Final Application for Compensation for David R. Maltz & Co., Inc. (Attachment #16 of the Record on Appeal and annexed hereto as Exhibit "E"), as Auctioneer, which were all dated February 14, 2008, but entered in the Bankruptcy Court on May 6, 2008.

20. On May 8, 2008, the United States Trustee's office filed a statement (Attachment #17 on the Record on Appeal, and annexed hereto as Exhibit "F") wherein it expressed that the requests as to compensation were reasonable and advised the Bankruptcy Court that it had no objection to the awarding of such compensation.

21. The Debtor forwarded a letter, dated May 8, 2008, to Diana G. Adams, United States Trustee, contending that the Chapter 7 Trustee was guilty of a conflict of interest in administering her Chapter 7 bankruptcy case as she alleged he unnecessary legal fees and for seeking compensation as Trustee beyond Pryor & Mandelup's requested legal fees. Debtor also alleged that the Trustee held Debtor's adversary claim in abeyance and then refused to allow Debtor's former attorney to release the file under seal. Additionally, Debtor maintained that the auction of the Property was fixed and that it was eventually sold to a "friendly buyer (straw)", despite the fact that the buyer, Harlin Schwartzman was Debtor's own friend. Her letter was also forwarded to a panoply of government officials including, but not limited to, the President of the United States, Senator Hillary Clinton, Senator Barack Obama, Senator John McCain, Governor David Patterson, and various District Court Judges.

6

22. The United States Trustee, by letter dated May 16, 2008, requested a written response to Debtor's baseless accusations.

23. On May 28, 2008, the Trustee, after having expended substantial time and energy in order to reconstruct the facts and circumstances relevant to Debtor's assertions, filed a detailed response to Debtor's allegations.

24. Neither the Debtor nor any of the myriad attorneys who have represented her throughout her bankruptcy case have filed an objection to the Amended Final Report. However, on June 10, 2008, a mere day prior to when the Final Meeting of Creditors was to be held, Debtor filed objections (the "Objections", Attachments #20 and #21 of the Record on Appeal and annexed hereto as Exhibit "G" and "H", respectively) to the Trustee's Application and the Amended Application by Pryor & Mandelup, LLP.

25. In the Objections, Debtor largely reiterated the allegations set forth in her May 8, 2008 letter to the United States Trustee (*infra*, ¶ 21) wherein she contended, *inter alia*, that the sale of the Property was a "forced deceptive sale" and that the Trustee was guilty of "double dipping" in light of both the Trustee and Pryor & Mandelup, LLP having sought separate awards for compensation.

26. At the Final Meeting of Creditors, held on June 11, 2008, the Bankruptcy Court set an evidential hearing, to be held on July 28, 2008, to resolve the various applications for compensation and the Objections.

27. By letter (annexed hereto as Exhibit "I") dated July 3, 2008, Diana G. Adams, United States Trustee, responded to Debtor's various allegations regarding the Trustee as follows: (a) that the Trustee did not delay in reviewing Debtor's cause of action against Island Properties and that he did not interfere with the Debtor's ability to bring such as suit on her own; (b) that Debtor's

7

allegations that the sale of the Property was fixed or tainted were without merit; and, generally, ©) that although Debtor's bankruptcy case has not run smoothly, the responsibility for that fact cannot reside with the Trustee.

28. On July 10, 2008, Pryor & Mandelup, LLP, filed a supplemental application for final compensation ("Supplemental Application", Attachment #44 of the Record on Appeal, and annexed hereto as Exhibit "J"), supplementing the Amended Application to take into account additional attorneys' fees incurred as a result of: (a) the settlement of the Island Properties claim and the preparing of the Amended Final Report to take into account the settlement; (b) the need to resolve with the United States Trustee issues pertaining to the entitlement of the Auctioneer to the requested compensation; ©) Debtor's May 8, 2008 letter to the United States Trustee which set forth very serious, if baseless, allegations against the Trustee, which necessitated great time and energy being spent in formulating an appropriate response; (d) correspondence with Greenpoint regarding its assertion of additional sums due and owing on its mortgage; (e) preparation for the Final Meeting of Creditors, which included, but was not limited to, a response to Debtor's contention that distributions to the secured creditors should be escrowed indefinitely pending resolution of the Debtor's litigation against those creditors, as well as Debtor's 11th hour Objections; (f) preparation for the Evidentiary Hearing, originally scheduled for July 28, 2008, but ultimately held on August 14, 2008, which included the preparation of a reply to Debtor's Objections, a memorandum of law in support of Trustee's Amended Final Report, and a proposed joint pre-hearing memorandum, as well as preparation for various direct examinations, cross-examinations, and research of various evidentiary issues. However, Pryor & Mandelup, LLP was not seeking an award of these fees, as such an award would have diminished the amounts available to creditors, rather it hoped that, in the event the Bankruptcy Court sought to reduce attorneys' fees or Trustee's commission due to Debtor's

Objections, then these additional expenditures of valuable time and resources should be considered.

29. After the Bankruptcy Court issued an order (Attachment #55 of the Record on Appeal and annexed hereto as Exhibit "K"), dated July 29, 2008, authorizing Steven Adler, Debtor's sixth attorney during the course of her bankruptcy case, to withdraw as Debtor's counsel, Debtor, on August 1, 2008, filed with the Bankruptcy Court a motion (Attachment #56 of the Record on Appeal and annexed hereto as Exhibit "L") requesting the assignment of a pro bono attorney to represent her interests. She claimed that the appointment of counsel would be a reasonable accommodation pursuant to the Americans with Disabilities Act ("ADA"), however she grounded her assumption that the ADA even applied to her on the fact that she allegedly is "restricted for medical reasons to sit, type, or stand for extended periods of time" and also cannot "walk distances." This was the first instance of Debtor making any claim for accommodations pursuant to the ADA.

30. However, at the time of her request for the appointment of *pro bono* counsel, Debtor was already represented by counsel in another action in the District Court for the Eastern District of New York. On the eve of her request for appointment in the Bankruptcy Court, Debtor's attorney, Gary M. Kushner, member of the law firm of Forschelli, Curto, Crowe, Deegan, Schwartz, Mineo & Cohn, LLP, filed a letter on behalf of Debtor and directed to the Honorable Denis R. Hurley in the case of Ben-Baruch v. Greenpoint Savings Bank, et al., 08-CV-0120 ("Greenpoint Action"). According to the docket, Mr. Kushner represented Debtor until November 12, 2008. Around the time of her request, Debtor was also represented in this other action by Jeffrey Benjamin, Esq., of Jeffrey Benjamin, P.C., who filed an Order to Show Cause on her behalf on September 29, 2008.

31. On August 12, 2008, merely two days before the evidentiary hearing to resolve the outstanding applications for compensation and Debtor's Objections, Debtor filed with the Bankruptcy Court a "Report and Request for ADA Accommodations" by Karin Huffer, M.S.,

9

M.F.T. on behalf of Debtor (Attachment #70 of the Record on Appeal and annexed hereto as Exhibit "M"). Debtor requested that the Bankruptcy Court allow the following accommodations, allegedly pursuant to the ADA: (1) the "immediate cessation of legal proceedings"; and, (2) that she "must have an advocate or counsel present for all legal proceedings as she is unable to physically, or emotionally meet the challenges expected to properly represent her case at this time." Ms. Huffer, who according to her letterhead is a marriage and family therapist in Las Vegas, Nevada, concludes that Debtor suffers from anxiety and post-traumatic stress disorder.

32. Neither Debtor's motion of August 1, 2008 nor the Report and Request for ADA Accommodations indicate how Debtor's alleged condition merits her any ADA accommodations, let alone the cessation of proceedings and court appointment of *pro bono* counsel. Furthermore, Debtor did not set forth in her application whether she could afford to retain counsel and whether she had went to any reasonable efforts to retain new counsel after the withdrawal of Mr. Adler.

33. Subsequent to the evidentiary hearing held on August 14, 2008, the Bankruptcy Court, on August 29, 2008, issued its Findings of Fact and Conclusions of Law (Attachment #65 of the Record on Appeal and annexed hereto as Exhibit "N") approving the Amended Final Report and granting all of the final applications for compensation. Contemporaneously, the Bankruptcy Court issued the Compensation Order, which gave rise to the instant appeal.

## PROCEDURAL HISTORY OF THE APPEAL

34. On September 8, 2008, Debtor filed a Notice of Appeal appealing the Bankruptcy Court's Compensation Order. On September 11, 2008, the Bankruptcy Court issued a Notice to Parties of Requirements and Deadlines.

10

35. On September 18, 2008, Debtor filed her Designation of Contents For Inclusion in the Record (the "Designation") and Statement of Issues (the "Statement"). The Statement maintained that the basis of the appeal concerned the "[v]iolation of Debtor's Civil Rights under the Americans with Disabilities Act and New York State Legislation Increasing Rights for the Disabled effective as of January 1, 2008."

36. On September 29, 2008, Appellee filed its Designation of Contents for Inclusion in the Record on behalf of the Trustee and Pryor & Mandelup, LLP.

37. On October 22, 2008, the present appeal was docketed with this Court.

38. Pursuant to Rule 8009 of the Bankruptcy Rules, an appellant must serve and file a brief within 15 days after entry of the appeal on the docket of the District Court unless the Court orders otherwise. On October 23, 2008, this Court issued a scheduling order requiring that Appellant's brief be filed with this Court no later than forty-five (45) days from the docketing of the appeal.

39. The deadline for Appellant to file her brief was December 8, 2008. Appellant failed to file a brief by that time.

40. Debtor did, however, file with this Court, on December 5, 2008, an Order to Show Cause and Memorandum of Law, which contained a completely different caption than the present appeal, does not directly involve Trustee, and clearly has little to do with the Compensation Order which is the foundation of this appeal. By way of the Order to Show Cause, Appellant is asking this Court to issue a restraining order enjoining various third parties from engaging in a sale of her Property until such time as this Court determines the ownership of the Property and a determination is made in a complaint allegedly filed by Appellant with the New York State Banking Department against a number of third parties, none of which are parties to the present appeal.

11

Clearly, the Order to Show Cause is facially defective, does not serve the function of an appellate brief, is not in the proper form of an appellate brief pursuant to Bankruptcy Rule 8010, and has positively nothing to do with the subject matter of this appeal, which concerns the alleged violation of Appellant's rights under the ADA.

## LEGAL ARGUMENTS

### THE APPEAL SHOULD BE DISMISSED DUE TO APPELLANT'S FAILURE TO COMPLY WITH BANKRUPTCY RULE 8009 AND THE ORDER OF THE DISTRICT COURT DATED OCTOBER 23, 2008 ESTABLISHING A BRIEFING SCHEDULE

41. The Appellant filed her bankruptcy case on March 13, 2004. During the intervening four and a half year period, the Appellant has maneuvered her case through three Chapters of the Bankruptcy Code, and six attorneys. The Debtor's conversion to Chapter 7 from Chapter 11 took place on October 28, 2005. Since that conversion, the Debtor has made numerous appeals. The Appellant, however, has failed to comply with any of the rules regulating the appeals process effectively indefinitely forestalling the administration of the estate by her dilatory conduct. The rules governing bankruptcy appeals set clear deadlines designed to streamline the appeals process for a speedy resolution of disputes. The Appellant's previous two appeals failed to comply with a single Bankruptcy Rule governing the appeals process and a scheduling order and, as such, those appeals were dismissed. Appellant's failure to abide by this Court's scheduling order, dated October 23, 2008, which granted Appellant far more time to marshal her resources and prepare a brief than Bankruptcy Rule 8009 alone would have allowed, similarly warrants dismissal of this appeal.

42. Bankruptcy Rule 8009 governs the filing of briefs on appeal. Rule 8009 states, in pertinent part:

12

> (a) Briefs. Unless the district court or the bankruptcy appellate panel by local rule or by order excuses the filing of briefs or specifies different time limits:
>
> 1. The Appellant shall serve and file a brief within 15 days after the entry of the appeal on the Docket pursuant to Rule 8007.

43. In connection with the her appeal of the bankruptcy court's Compensation Order, pursuant to Bankruptcy Rule 8009, the Appellant had until November 6, 2008 to serve and file her Appellant brief. By subsequent order of this court, a briefing schedule was set giving the Appellant until December 8, 2008 to file her Appellant brief. No brief has ever been filed with this court.

44. "The time requirement in Rule 8009 is not jurisdictional. However, failure to file a timely brief may result in dismissal of the appeal depending upon the circumstances." Adler v. Bancpleus Mortg. Corp., 108 B.R. 435, 438 (S.D.N.Y. 1989) citing, Tampa Chain Co., Inc. v. Reichard 835 F.2d 54, 55 (2d Cir. 1987).

45. In Reichard, the Second Circuit affirmed the view that negligence, bad faith and indifference are all factors, though not necessarily the only factors, that help determine whether there is a basis for a court to dismiss an appeal. Id., at 55. The Reichard court dismissed the appeal at issue in that case for defendants' failure to file their brief for seven months. Id. While the length of the delay at issue was far greater in Reichard than in the in present case, Appellant's conduct in the present case has evidenced far more bad faith and indifference to the judicial process.

46. In Adler, the district court dismissed the debtor's bankruptcy case for failure to file an appellant brief when, looking at the record as a whole, "it is clear that Adler's failure to file his brief on appeal is only the latest in a long series of dilatory tactics in both the state and federal courts. It is apparent that the reason why Adler has filed no brief is that he has no position of merit

to present. Adler is seeking only one thing -- delay." Adler v. Bancpleus Mortg. Corp., 108 B.R. at 438.

47. According to the Eastern District in the case of Babcock v. Philp, 2008 U.S. Dist. LEXIS 88329, (E.D.N.Y. 2008), in deciding upon whether an appeal should be dismissed in light of the failure to timely file a brief, a court should consider whether the party exhibited "bad faith, negligence, or indifference." Id., at 4. Appellant has clearly displayed bad faith not only in the present appeal but throughout the course of her entire bankruptcy case, as well as negligence and indifference with respect to filing deadlines in the current and former appeals.

48. Moreover, the fact that Appellant is currently *pro se* does not alter the calculus. "*[P]ro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them." Edwards v. INS, 59 F.3d 5, 8 (2d Cir. 1995). This rule is even more compelling in the present case in light of the fact that Appellant had her previous two appeals dismissed by this Court for not having complied with various filing deadlines.

49. As in Adler, there can be no justification for the Appellant's failure to comply with the Court's scheduling order. Looking at the history of this case, it is as apparent as it was to the court in Adler that the only explanation for the Appellant's repeated failures is to effect a delay in the administration of her estate by the Chapter 7 Trustee. The Appellant failed to take any action, aside from the timely filing of her appeal, in her earlier two appeals. In the present appeal, Appellant took the extra step of filing her Designation and Statement. The true nature of the present appeal has been revealed by Appellant's filing of the December 5, 2008 Order to Show Cause. Rather than filing a brief on the civil rights issue set forth in her Statement, Appellant has sought to invoke this Court's jurisdiction to prevent any sale of her former Property by and between parties that are not involved in the instant appeal. Appellant's conduct gives rise to the reasonable inference that

Appellant is using this appeal as a vehicle to further influence what becomes of her former Property and to use this Court as an alternative forum for her continued efforts to attack the disposition of the Property. This bad faith conduct, taken together with the long history of delay evidenced by the Debtor's nearly five years in bankruptcy, her failure to timely market her Property while in Chapter 11, and her numerous appeals, provides ample justification for dismissing the instant appeal. It is clear abuse of the bankruptcy process to permit these dilatory tactics to obstruct the closing of her bankruptcy case.

## THE APPEAL SHOULD BE DISMISSED DUE TO THE APPELLANT'S FAILURE TO MEET THE STANDARD FOR APPOINTMENT OF COUNSEL UNDER THE ADA

50. A request for court appointment of counsel under the ADA generally arises in discrimination actions arising themselves pursuant to the ADA. See e.g. Donohoe v. Food Lion Stores, Inc., 253 F. Supp. 2d 1319 (N.D. Ga. 2003); Johnson v. City of Port Arthur, 892 F. Supp. 835, (E.D. Tex. 1995).

51. The ADA uses the same four criteria, set forth in the following paragraph, to resolve requests for appointment as is the case under Title VII of the Civil Rights Act of 1964 ("Title VII"). Lopez v. San Antonio State Hospital, 2006 U.S. Dist. LEXIS 69295, 2 (W.D. Tex. 2006). While under Title VII and the ADA, the litigant has a right to *request* the court appoint an attorney, the statutes do not confer a right to actually have the court appoint an attorney. Id. It is within the broad discretion of the court. Id.

52. In the only bankruptcy case found to have confronted the issue of a request for the appointment of counsel under the ADA, the court chose to employ the same criteria as would be applied if the request had been made in a typical discrimination case brought pursuant

15

to the ADA itself. Stern v. Stern (In re Stern), 2007 Bankr. LEXIS 2108, 10 (D. Mass. 2007). In Stern, the Debtor requested, using the ADA as a source for the possible authority, that the court appoint counsel to represent him in light of his alleged depression and bi-polar disorder. Id. The court noted that there is no absolute right to the appointment of an attorney under the ADA and that, in exercising its discretion, a trial court should consider the following factors: "(1) whether the complainant has the financial ability to retain counsel; (2) whether the complainant has made a diligent effort to retain counsel; (3) whether the complainant has a meritorious claim; and (4) whether the complainant 'is capable of representing himself' or herself." Id.

53. The Court found that the Debtor was not entitled to the appointment of counsel, despite facts tending in Debtor's favor on the first and fourth criteria, based on the lack of merit in his underlying claim, wherein he sought to discharge his child support obligations.

54. Similarly, Appellant also lacks a meritorious claim as evidenced by the unequivocal conclusions of the Bankruptcy Court and United States Trustee as to the substance of Appellant's various objections to the various applications for compensation.

55. Moreover, Appellant has failed to establish that she lacks the financial ability to retain counsel. Clearly, she had the financial resources to retain six different attorneys over the course of her bankruptcy case. Most tellingly, Appellant had at least one attorney, Gary M. Kushner, Esq., representing her interests in the Greenpoint Action, at the time she made her request for appointment in this action. Clearly, if Appellant was able to both retain and compensate an attorney in one action, it is reasonable to believe that Appellant could have retained an attorney to represent her in this action had she exercised reasonable diligence in trying to locate and retain one. At the very least, the presence of counsel representing Appellant

16

in the Greenpoint Action, speaks to her ability to retain counsel and, consequently, that she fails to meet the ADA standard for discretionary court appointment of counsel.

56. Appellant also never made a showing that she diligently attempted to retain counsel in vain after Steven Adler withdrew as her attorney. The bankruptcy case has been in existence for nearly five years, yet it is only now, at this late hour, that Appellant requested court appointment of an attorney. This request was merely yet another attempt by Appellant to delay the conclusion of her bankruptcy case.

57. Finally, there is no reason to believe that Appellant is incapable of representing herself in this bankruptcy case, given her history of aggressively representing her own interests in the bankruptcy case, and especially in light of the fact that the case is nearing its close. Moreover, there has been no evidence to suggest that her alleged anxiety and post-traumatic stress disorder, assuming these maladies do indeed beset her, would render her unable to represent her interests in the case. As such, the basis of her appeal is wholly lacking in merit and the Bankruptcy Court was under no duty to appoint a pro bono attorney to represent her, especially in light of her failure to establish that she met any, let alone all, of the four criteria necessary for a court to exercise its discretion and appoint counsel.

## CONCLUSION

58. As established above, the Appellant's appeal should be dismissed in light of her failure to timely file and serve a brief, her use of this appeal as a vehicle to challenge unrelated actions by uninvolved third parties, and because even if she had properly filed and served a brief, there is no absolute right to the appointment of counsel under the ADA, and she failed to properly

17

establish that she was entitled to appointment of counsel pursuant to the appropriate criteria.

59. Looking at the history of this case, it is clear that there can be only one explanation of the Debtor's repeated failures to comply with the rules governing appeals: to obstruct the orderly liquidation of her estate by the duly appointed Chapter 7 Trustee thereby indefinitely influencing the fate of the Property.

60. The deadline Appellant failed to meet are clearly delineated by the scheduling order issued by this Court. Furthermore, notice is given by the bankruptcy court to all parties of the various deadlines. Thus, there can be no excuse for the Appellant's failure and the appeal must be dismissed.

Dated: Westbury, New York
      December 22, 2008

PRYOR & MANDELUP, L.L.P.
Attorneys for the Chapter 7 Trustee

By: _____
    J. Logan Rappaport

675 Old Country Road
Westbury, New York 11590
(516) 997-0999